IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| NICK SPAGNOLO, | ) | |
| | ) | Civ. No. 12-00255 ACK-BMK |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| U.S. INTERNAL REVENUE SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DENYING AS MOOT
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

The Court hereby DISMISSES WITHOUT PREJUDICE
Mr. Spagnolo's Complaint because he lacks standing to pursue his
claims against the IRS, under Article III of the United States
Constitution.

PROCEDURAL HISTORY

Plaintiff Nick Spagnolo filed his Complaint on May 11,
2012. (Doc. No. 1.) The United States[1] filed a motion to dismiss
the Complaint for lack of subject matter jurisdiction on August
24, 2012. (Doc. No. 18 ("MTD").) The motion was supported by a
declaration from counsel and various exhibits. (Doc. No. 19

_____

[1] As the United States correctly notes, the Internal
Revenue Service ("IRS") is not a suable entity; the Court
therefore substitutes the United States as the proper party
defendant. See, e.g., Devries v. I.R.S., 359 F. Supp. 2d 988,
991-92 (E.D. Cal. 2005); Erickson v. Luke, 787 F. Supp. 1364,
1369-70 (D. Idaho 1995).

("Watson Decl.").) Mr. Spagnolo filed an Opposition to the Motion, along with supporting exhibits, on September 17, 2012. (Doc. No. 26 ("Opp.").) The United States did not file a reply.

Mr. Spagnolo filed a Motion for Summary Judgment on October 10, 2012. (Doc. No. 39.) The United States filed an opposition to the motion on November 26, 2012. (Doc. Nos. 47 & 48.) Mr. Spagnolo mailed a Reply in support of his Motion for Summary Judgment on December 12, 2012, well after the deadline prescribed by Local Rule 7.4. (Doc. No. 53.) In consideration of Mr. Spagnolo's pro se status, however, the Court considered the Reply.

The Court held a hearing regarding both motions on December 17, 2012.

### STATUTORY BACKGROUND

The Social Security Act, 42 U.S.C. §§ 401 <u>et seq.</u>, creates a federal insurance scheme which provides old-age, disability, survivors, and Medicare insurance. FICA, the Federal Insurance Contributions Act, is one of the taxing statutes that fund the Social Security Act's programs. <u>See</u> <u>Whitaker v. United States</u>, 194 F. Supp. 505, 507 (D.Mass.), <u>aff'd</u>, 295 F.2d 817 (1st Cir. 1961).

Under FICA, every employer must withhold the FICA tax on wages from its employees' paychecks, 26 C.F.R. § 31.3102-1(a), and must also pay its own tax, generally equal to the employee's

tax, for each person who qualifies as an "employee," 26 U.S.C. §§ 3111(a), 3121(d). Employers must also pay Federal Unemployment Tax Act ("FUTA") taxes for each employee. 26 U.S.C. § 3301. Employers do not have to withhold and pay these employment taxes, however, in regard to payments to "independent contractors." If a business uses independent contractors, it need only send annual information returns, on Form 1099 to the contractors and on Forms 1096 & 1099 to the IRS, indicating the income paid during the year. 26 C.F.R. § 1.6041-1(a). The contractors, in turn, must pay their own self-employment contribution taxes.

For FICA and FUTA tax purposes, section 3121(d) of the Internal Revenue Code defines an employee as: (1) any officer of a corporation; or (2) any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee. 26 U.S.C. § 3121(d).

FICA and FUTA's tax obligations are enforced by the IRS. 26 U.S.C. §§ 6201, 6205, 6211. There are many federal cases in which the IRS has pursued employers because they have underpaid FICA taxes by improperly treating employees as if they were independent contractors. See, e.g., Springfield v. United States, 88 F.3d 750, 753 (9th Cir. 1996).

**FACTUAL  BACKGROUND**[2/]

Plaintiff Nick Spagnolo delivered telephone directories for three Pennsylvania directory delivery companies seasonally for at least ten years, until 2007.[3/] (Compl. ¶¶ 1, 7; Compl. Ex. 1 at 10; Watson Decl., Ex. 1.) The delivery companies evidently treated Mr. Spagnolo for tax purposes as an independent contractor rather than an employee, as they did not pay FICA or FUTA taxes relating to him and did not withhold those taxes from his paychecks. (MTD at 2.) The companies reported his income on Forms 1099 rather than W-2s. (See Compl. Ex. 9.)

In 2010, Mr. Spagnolo began receiving disability benefits. (Compl. Ex. 1, at 8.) In August 2010, Mr. Spagnolo requested, using IRS Form SS-8, that the IRS examine whether he was an employee or an independent contractor, which he believed would allow him to claim Social Security, Medicare, and Medicaid benefits. (See Watson Decl., Ex. 1.) He also sent the IRS a follow-up letter in September 2010, in which he requested that his income reported on Forms 1099 be transferred to W-2s and that

---

[2/] The facts as recited in this Order are for the purpose of disposing of the current motion and are not to be construed as findings of fact that the parties may rely on in future proceedings.

[3/] At the hearing on the instant motions, Mr. Spagnolo stated that he is seeking relief regarding the years 2000 until 2007 or 2008. He stated that he does not dispute his classification as an independent contractor for years prior to 2000.

his former employers be required to pay FICA and FUTA taxes relating to his employment. (Compl. Ex. 2, at 1.)[4/]

The IRS collected information from Mr. Spagnolo's former employers and determined that Mr. Spagnolo was an independent contractor. (See Watson Decl., Ex. 2.) It sent him and his former employers a letter detailing its conclusions on October 7, 2011. (Id.)[5/]

In December 2011, Mr. Spagnolo sent documents to the IRS which he believed showed that he was an employee rather than an independent contractor during the relevant period. (See Compl. ¶ 4; Compl. Ex. 1, at 8-13.) The IRS has not responded. (Compl. ¶ 4.) Mr. Spagnolo has complained to the Pennsylvania Department of Labor & Industry and unemployment office and the Hawai'i Unemployment Division about his former employers' failure to provide him with W-2s. (Opp. at 6.) He has also complained to the Pennsylvania Human Relations Commission. (Opp., Ex. 10.)

On January 18, 2012, Mr. Spagnolo filed in this district a motion for a writ of mandamus naming the IRS as

---

[4/] The United States asserts, without supporting evidence, that Mr. Spagnolo has not filed any federal income tax returns or paid any federal income or self-employment taxes since 1996, and that the last time he paid taxes, in 1996, he paid self-employment taxes. (MTD at 3 n.1.)

[5/] At the same time, Mr. Spagnolo received another determination letter from the IRS regarding a different former employer, a construction company, for which he worked in 2005. (See MSJ at 25-32.) The IRS determined that as to that work, he was an "employee" for tax purposes. (See id.)

defendant, accompanied by an application to proceed <u>in forma</u> <u>pauperis</u>. (Case No. 12-cv-00039, Doc. No. 1.) The magistrate judge reviewed Mr. Spagnolo's application and the merits of his motion as required under 28 U.S.C. § 1915(e)(2) and recommended that the court dismiss Mr. Spagnolo's action because it failed to state a claim on which relief could be granted. (<u>Id.</u> Doc. No. 4.) Neither party filed any objections to the magistrate judge's recommendation, and the district court judge dismissed the action on February 9, 2012. (<u>Id.</u> Doc. No. 5.) Mr. Spagnolo later filed this action.

Mr. Spagnolo alleges that the IRS's classification of him as an "independent contractor" rather than an "employee" is incorrect and prevents him from receiving social security disability insurance and Medicare coverage. (Compl. ¶ 1.) He seeks to have: (1) his tax status for the relevant years corrected to "employee"; (2) his former employers forced to pay FICA and other federal taxes relating to his employment; and (3) his Social Security records corrected so that he may receive social security disability insurance. (Compl. ¶ 2.)

## STANDARD

### I.   Motion To Dismiss for Lack of Subject Matter Jurisdiction

A court's subject matter jurisdiction may be challenged under Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)"). "A party invoking the federal court's jurisdiction has the burden

of proving the actual existence of subject matter jurisdiction."
See Thompson v. McCombe, 99 F.3d 352, 353 (9th Cir. 1996).

On a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the court is not "restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988). "Once the moving party [converts] the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." Savage v. Glendale Union High Sch., 343 F.3d 1036, 1040 n.2 (9th Cir. 2003).

"The requirement that the nonmoving party present evidence outside his pleadings in opposition to a motion to dismiss for lack of subject matter jurisdiction is the same as that required under Rule 56(e) that the nonmoving party to a motion for summary judgment must set forth specific facts, beyond his pleadings, to show that a genuine issue of material fact exists." Trentacosta v. Frontier Pac. Aircraft Indus., Inc., 813 F.2d 1553, 1559 (9th Cir. 1987). When ruling on a jurisdictional motion involving factual issues which also go to the merits, the moving party "should prevail only if the material jurisdictional

facts are not in dispute and the moving party is entitled to prevail as a matter of law." Casumpang v. Int'l Longshoremen's & Warehousemen's Union, 269 F.3d 1042, 1060-61 (9th Cir. 2001).

## II.  Special Considerations for a Pro Se Litigant

A pro se litigant's pleadings must be read more liberally than pleadings drafted by counsel. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004); Eldridge v. Block, 832 F.2d 1132, 1137 (9th Cir. 1987). When a plaintiff proceeds pro se and technically violates a rule, the court should act with leniency toward the pro se litigant. Draper v. Coombs, 792 F.2d 915, 924 (9th Cir. 1986); Pembrook v. Wilson, 370 F.2d 37, 39-40 (9th Cir. 1966). However, "a pro se litigant is not excused from knowing the most basic pleading requirements." Am. Ass'n of Naturopathic Physicians v. Hayhurst, 227 F.3d 1104, 1107-08 (9th Cir. 2000).

Before a district court may dismiss a pro se complaint for failure to state a claim upon which relief can be granted, the court must provide the pro se litigant with notice of the deficiencies of the complaint and an opportunity to amend it if the deficiencies can be cured, prior to dismissal. Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992); Eldridge, 832 F.2d at 1136. However, the court may deny leave to amend where amendment would be futile. Flowers v. First Hawaiian Bank, 295 F.3d 966, 976 (9th Cir. 2002) (citing Cook, Perkiss & Liehe, Inc.

8

v. N. Cal. Collection Serv., Inc., 911 F.2d 242, 247 (9th Cir.
1990) (per curiam)); Eldridge, 832 F.2d at 1135-36.

## DISCUSSION

        The Court finds that it must dismiss Mr. Spagnolo's
Complaint for lack of subject matter jurisdiction, although not
for the reasons argued in the United States' Motion. Mr. Spagnolo
filed his Complaint because he believes that the IRS's
classification of him as an independent contractor prevents him
from receiving federal benefits. That belief is incorrect.
Because the IRS's worker classification does not determine
whether Mr. Spagnolo receives federal benefits, Mr. Spagnolo does
not have standing to bring this case. Mr. Spagnolo's claims
should be directed to the Social Security Administration, not the
IRS.

## I.    Sovereign Immunity

        First, the United States argues that the Court has no
jurisdiction here due to sovereign immunity. The Court disagrees.

        The United States, as a sovereign, cannot be sued
unless it has expressly consented to suit. Gilbert v. DaGrossa,
756 F.2d 1455, 1458 (9th Cir. 1985). Where the United States has
not consented to suit, the case must be dismissed. Id. This
immunity extends to the IRS. See, e.g., Minor v. United States,
294 Fed. App'x 295, 296 (9th Cir. 2008) (citing Gilbert, 756 F.2d
at 1458). As the United States correctly points out, the federal

9

Anti-Injunction Act prohibits lawsuits brought "for the purpose of restraining the assessment or collection of any tax . . . whether or not [the plaintiff] is the person against whom such tax was assessed." 26 U.S.C. § 7421(a). This statute bars most federal lawsuits regarding tax collection.

In this case, however, Mr. Spagnolo is not seeking to "restrain" the collection of taxes; in fact, he is seeking to have the IRS collect <u>more</u> taxes - from his former employers. Such lawsuits are rare, for obvious reasons, but when they do arise, they are not barred by the Anti-Injunction Act. <u>See</u> <u>Tax Analysts & Assocs. v. Shultz</u>, 376 F. Supp. 889, 892 (D.D.C. 1974). In <u>Tax Analysts</u>, the plaintiff was a non-profit organization that promoted tax reform. Its lawsuit sought "to force the IRS to collect a tax which is due, but which has been allegedly avoided by an illegal Revenue Ruling." <u>Id.</u> at 893. The court found that "an action to force the collection of [a] tax is clearly outside of both the language and the intent of section 7421(a)" and that the suit therefore was not barred by the Anti-Injunction Act. <u>Id.</u> at 894. The court found that the lawsuit also was not barred by the Declaratory Judgment Act, for the same reason. <u>Id.</u> Thirty years later, the Supreme Court cited the court's decision approvingly as part of federal Anti-Injunction Act jurisprudence. <u>See</u> <u>Hibbs v. Winn</u>, 542 U.S. 88, 103 (2004); <u>see also</u> <u>Cohen v. United States</u>, 650 F.3d 717, 726-27 (D.C. Cir. 2011).

Here, as in <u>Tax Analysts</u>, Mr. Spagnolo is seeking to "force the collection of [a] tax." 376 F. Supp. at 894. (<u>See</u> Opp. at 9 ("[U]nder tax LAW ALL TAX DUE TO THE IRS - MUST NOW be paid by the <u>company</u> VIOLATOR.").) Thus, Mr. Spagnolo's lawsuit is not barred by the United States' sovereign immunity.

## II.   <u>Standing</u>

Although Mr. Spagnolo's claim is not barred by sovereign immunity, he nonetheless does not have standing to pursue his claim against the IRS.

Standing is "an essential and unchanging part" of the "case or controversy" requirement of Article III of the United States Constitution. <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992). Standing must be considered by federal courts even if the parties fail to raise it. <u>United States v. Hays</u>, 515 U.S. 737, 742 (1995); <u>see</u> <u>Carrico v. City & County of S.F.</u>, 656 F.3d 1002, 1005 (9th Cir. 2011) (court may raise standing issue itself at any time). Standing is gauged by the specific claims that the party presents; i.e. "whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." <u>Allen v. Wright</u>, 468 U.S. 737, 752 (1984).

To establish a "case or controversy" under Article III, the plaintiff must show the following three elements: (1) injury - an "injury in fact" which is concrete and not conjectural; (2) causation - a causal connection between the injury and the

defendant's conduct; and (3) redressability - a likelihood that the injury will be remedied by a decision in plaintiff's favor. Sprint Commc'ns Co., LP v. APCC Servs., Inc., 554 U.S. 269, 274 (2008) (describing these three elements as an "irreducible constitutional minimum"). In this case, Mr. Spagnolo cannot show either causation or redressability.

## A. Causation

As to causation, the Supreme Court's decision in Simon v. Eastern Kentucky Welfare Rights Organization, 426 U.S. 26 (1976), is instructive. In Simon, a group of non-profits and plaintiffs sued the IRS under the Administrative Procedure Act claiming that the IRS had violated the Internal Revenue Code by extending tax-exempt charitable status to hospitals which refused medical care beyond emergency-room care to indigent patients. The individual plaintiffs were indigent people who had been refused non-emergency care by such hospitals. The lawsuit sought to limit the number of hospitals which were exempt from taxes and thus, like Mr. Spagnolo's suit, sought to have the IRS collect more taxes. The Supreme Court declined to reach "the question of whether there is a statutory or an immunity bar to this suit." Id. at 37. (That question was addressed by the Tax Analysts case discussed above.)

Instead, the Supreme Court concluded that plaintiffs did not have standing to sue because they were not "adversely

12

affected or aggrieved by agency action within the meaning of a relevant statute." <u>Simon</u>, 426 U.S. at 38 (quoting 5 U.S.C. § 702). The Court explained that to meet the "minimum" standing requirement of Article III of the Constitution, a plaintiff must "establish that, in fact, the asserted injury was the consequence of the defendants' actions, or that prospective relief will remove the harm." <u>Simon</u>, 426 U.S. at 45 (quoting <u>Warth v. Seldin</u>, 422 U.S. at 505). The Supreme Court concluded that the plaintiffs could not establish either that the hospitals refused them medical care because the IRS had granted them charitable status or that removing the hospitals' charitable status would get medical care for the plaintiffs. <u>Simon</u>, 426 U.S. at 40-43.

In this case, as in <u>Simon</u>, the plaintiff's injury is not a consequence of the defendant's actions. Mr. Spagnolo believes that he is being denied benefits because his former employers did not pay the correct employment taxes; he believes that if his IRS worker classification is changed and his former employers are forced to pay FICA taxes, he will receive additional federal benefits. (<u>See</u> Compl. ¶ 2; MSJ at 16 ("Plaintiff has the right to correction of 1099 wage statements to W-2 forms including FICA and FUTA requirements . . . . These wages under law are then to be <u>included</u> in the SOCIAL SECURITY FILES . . . . [M]y credits will EXCEED 20 and I will receive SSDI and Medicare.").) Mr. Spagnolo is mistaken. A person's right to

13

social security benefits does <u>not</u> depend on his employers'
payment of FICA taxes.

Mr. Spagnolo's mistake is common and has been shared by
other litigants in federal courts. As mandated by statute, the
money raised through FICA taxes must be used exclusively to fund
Social Security. <u>See</u> 42 U.S.C. § 911(a). But "[a]lthough FICA and
the SSA are inextricably linked, their purposes are vastly
different." <u>McDonald v. S. Farm Bureau Life Ins. Co.</u>, 291 F.3d
718, 724 (11th Cir. 2002). One court explained the system thus:

> [N]either the employee's share nor the
> employer's share of the FICA tax is deposited
> and invested on behalf of the employee.
> Current FICA taxes fund the benefits of
> current social security recipients; the FICA
> taxpayers of today are funding social
> security payments to the wage earners of
> yesterday. Accordingly, employees do not earn
> social security credits . . . in exchange for
> paying their share of the FICA taxes or for
> their employer's paying of its share:
> "eligibility for benefits, and the amount of
> such benefits, do not in any true sense
> depend on contribution to the program through
> the payment of taxes, but rather on the
> earnings record of the primary beneficiary."
> Employees earn credit solely by earning
> wages.

<u>330 W. Hubbard Rest. Corp. v. United States</u>, 37 F. Supp. 2d 1050,
1055 (N.D. Ill. 1998) (quoting <u>Flemming v. Nestor</u>, 363 U.S. 603,
609 (1960)); <u>see</u> <u>330 W. Hubbard</u>, 37 F. Supp. 2d at 1055-56
("Perhaps [plaintiff] is confused because an employee's wage
earning also creates a FICA tax liability for the employee and

14

employer, but the [social security] credit and the tax have nothing else to do with each other.")

Therefore, "an employee who qualifies for Social Security benefits receives those benefits regardless of whether his employer has complied with the requirements of FICA. . . . Simply put, an employee's ability to collect Social Security is in no way dependent on his employer's compliance with FICA." McDonald, 291 F.3d at 724; see Glanville v. Dupar, Inc., 727 F. Supp. 2d 596, 600 (S.D. Tex. 2010) ("Although FICA taxes are used to fund the Social Security program, a worker's eligibility for social security benefits does not depend on his employer's actual payment of FICA taxes."); Gifford v. Meda, No. 09-cv-13486, 2010 WL 1875096, at *12 (E.D. Mich. May 10, 2010) ("It is completely irrelevant whether or not his employer has paid his FICA share or not, if the employee can be properly classified and has reported his income, he will qualify to receive social security benefits."); Salazar v. Brown, 940 F. Supp. 160, 163 (W.D. Mich. 1996) ("[A] worker's entitlement to social security benefits does not depend on the actual payment of FICA taxes by the employer."). The fact that the IRS did not collect FICA taxes from Mr. Spagnolo's former employers does not reduce Mr. Spagnolo's social security benefits.[6/] Thus, Mr. Spagnolo

---

[6/] At the hearing on this motion, Mr. Spagnolo indicated that he had been told by the Social Security Administration that documents from the IRS were required to supplement the record of

cannot demonstrate the causation required for Article III
standing.

### B.   Redressability

Mr. Spagnolo also cannot demonstrate that the action he
requests from the Court would remove the harm that he has
suffered. The relief that a plaintiff seeks must redress the
"injury in fact" that he has suffered. It is not enough that a
favorable judgment will benefit the public at large or punish a
wrongdoer or simply make plaintiff happy. Steel Co. v. Citizens
for a Better Env't, 523 U.S. 83, 107 (1998). "Psychic
satisfaction" alone will not create Article III standing. Id.

The Social Security Administration's determination of
whether wages are "covered" so as to create social security
benefits is entirely separate from the IRS's determination of
whether those wages should be taxed under FICA. For example, an
employee who had FICA taxes withheld from his paychecks may still
be denied federal disability benefits if the Social Security
Administration determines that he was not, in fact a covered
employee. See McCall v. Astrue, No. 05-Civ-2042, 2008 WL 5378121,
at *11 (S.D.N.Y. Dec. 23, 2008) (although there is "considerable
equitable appeal" to the argument that past FICA payments should

---

his covered wages. The Court notes that if anyone at the Social
Security Administration misled Mr. Spagnolo about how the FICA
statutory scheme works, his claim would, again, properly be
against the Social Security Administration, not the IRS.

entitle the employee to disability coverage, "[c]overage is achieved by receiving covered 'wages' . . . not from having FICA taxes erroneously withheld from payments that are not in fact covered . . . ."). Thus, even if the Court were to declare that Mr. Spagnolo was an employee under IRS standards and order his former employers to pay the FICA taxes to the IRS, the Court's order would not affect Mr. Spagnolo's social security benefits.

In sum, because no action by the IRS can create benefits for Mr. Spagnolo, Mr. Spagnolo does not have standing to pursue his lawsuit against the IRS.

**III. <u>Proper Remedy</u>**

The remedy for Mr. Spagnolo's claim lies with the Social Security Administration, not the IRS. <u>See</u> <u>Gifford</u>, 2010 WL 1875096, at *11. The Social Security Act creates a specific administrative procedure for employees who believe that their earnings have not been credited properly to their social security record. <u>Salazar</u>, 950 F. Supp. at 163. "An employee seeking to establish that he has earned wages that should be credited to his account for social security purposes must proceed administratively before the [Commissioner of Social Security] to correct the employee's earnings record . . . ." <u>Id.</u> (citing 42 U.S.C. § 405(c)(4), (5); <u>see</u> <u>McDonald</u>, 291 F.3d at 726. The Social Security Administration will investigate the requested correction and make any necessary changes. 20 C.F.R.

17

§§ 404.8020.823. At the end of that process, if Mr. Spagnolo is not satisfied with the Administration's resolution of his complaint, he may file a complaint in federal district court. 42 U.S.C. § 405(c)(8); see, e.g., Jabbar v. Sec'y of Health & Human Servs., 855 F.2d 295 (6th Cir. 1988) (reversing the Secretary's determination and ordering correction of earnings record).[7]

## CONCLUSION

Mr. Spagnolo's Complaint is based on a misunderstanding. He believes that he is being denied federal benefits because his former employers failed to pay FICA taxes. He is mistaken. Whether a person is entitled to federal benefits does not, as a matter of law, depend on whether his employers properly paid their taxes. Mr. Spagnolo's dispute is with the Social Security Administration, not the IRS. Mr. Spagnolo's Complaint lacks standing because even if the Court were to do what Mr. Spagnolo asks, that remedy still would not get him the benefits he claims he has been unfairly denied.

---

[7] The Court notes that Mr. Spagnolo already has an action proceeding against the Commissioner of Social Security, Civ. No. 12-00563 LEK-BMK, filed on October 19, 2012. Mr. Spagnolo explained at the hearing on the instant motions that his case against the Social Security Administration concerns benefits that Mr. Spagnolo asserts he is owed based on the Administration's current record of his covered earnings. It does not raise the issues of his worker classification or of supplementing the record of his earnings. The Court cannot discern from Mr. Spagnolo's complaint in that action whether he has gone through the administrative procedure required before he can contest his worker classification in federal court.

For the foregoing reasons, the Court GRANTS Defendant's Motion To Dismiss and DISMISSES WITHOUT PREJUDICE Plaintiff's Complaint. Plaintiff has also filed a Motion for Summary Judgment. (Doc No. 39.) In view of the Court's granting the United States's Motion To Dismiss, Mr. Spagnolo's Motion for Summary Judgment is DENIED as moot.

IT IS SO ORDERED.

DATED: Honolulu, Hawai'i, December 18, 2012



_____
Alan C. Kay
Sr. United States District Judge

Spagnolo v. IRS, Civ. No. 12-00255 ACK BMK, Order Granting Defendant's Motion To Dismiss and Denying as Moot Plaintiff's Motion for Summary Judgment